NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1069n.06

Nos. 10-3036/11-3741/11-3532

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Oct 12, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| MICHAEL R. HARPER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, COLE, and ROGERS, Circuit Judges.

PER CURIAM. Defendant Michael R. Harper appeals both his conviction for failure to update his registration under the federal Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a), and the 18-month sentence imposed by the district court based on the jury verdict finding him guilty. On appeal, Harper contends that SORNA is unconstitutional on various grounds; that the evidence presented at trial was legally insufficient to convict and, moreover, that it created a fatal variance with the indictment; that the district court erred in three evidentiary rulings at trial and in its response to a question from the jury during deliberations; and that his sentence was both procedurally and substantively unreasonable. We note at the outset that the question of SORNA's constitutionality on the same grounds raised by Harper has been foreclosed by our recent opinions in *United States v. Felts*, 674 F.3d 599 (6th Cir. 2012), and *United States v.*

*Coleman*, 675 F.3d 615 (6th Cir. 2012). We therefore pretermit discussion of that issue in this appeal and, finding no merit to the remaining claims, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Harper's obligation to comply with SORNA arose from his 1990 conviction in Minnesota state court for attempted sexual abuse of a minor. Claiming that he was too intoxicated to recall his assault on a 15-year-old girl, Harper entered an *Alford* plea and was sentenced to five years' probation. However, he absconded and was not located and rearrested until 1999. Convicted of violating his parole, Harper was sentenced to 13 months in prison. In November 1999, two days before his release to a halfway house, Harper met with a corrections official who helped him fill out his initial sex-offender registration form,[1] under a Minnesota law enacted in 1993 that applied to all such offenders then in custody or on parole. She advised him of his obligations as a registered sex offender – he would be required to maintain registration for a period of ten years from the date of this initial registration and was obligated to update his registration five days prior to changing his residential address in Minnesota or another state. Harper signed "under

---

[1]The record with regard to Harper's initial registration was established through the testimony of Laraine Lekander, the case manager for the Minnesota Department of Corrections who screened Harper at intake and handled the paperwork at the time of his release. On November 15, 1999, she went over the Sex Offender Notification and Registration Form that constituted Harper's initial registration and secured his signature on the form. It contained the essential information about the 1990 sex-offense conviction that necessitated registration, the address of the halfway house in St. Paul to which he would transfer two days later, and a "registration advisory" notifying him of his obligation to update the information provided on the registration form "at least five days prior to changing that address, including moving to another state." When Harper left the halfway house in April 2000 without updating his address, this first failure to comply constituted a "gross misdemeanor" under Minnesota Statute § 243.160. When he left the state sometime later, without giving five days' prior notice, the second non-compliance constituted a felony. *Id.*

duress," adding a reference to a state statute that prohibited retroactive application of changes in prison rules and policies but obviously did not apply to the registration statute.

After his release from the halfway house, Harper lived in several states, moving from Minnesota to Florida, Arizona, North Carolina and, finally, to Ohio, where he settled in Cincinnati in April 2009. He did not re-register in any of those states but, based on information from a North Carolina law enforcement official, he was contacted by letter from the Hamilton County (Ohio) Sheriff's Office in June 2009 and advised that he needed to appear there in person within three days and register or face certain specified consequences. Harper did not appear as directed, but he did call the Sheriff's Office to explain that he was not required to register. When told by an official there that documentation from Minnesota indicated to the contrary, he responded by saying that he would "see her in court." As a result, an officer was sent to Harper's residence to verify the address and had Harper sign a form acknowledging his address. That form was not a registration document, but it did advise Harper that he must appear in person at the Sheriff's Office in order to register properly.

When Harper did not appear as directed, his case was submitted to the grand jury, which returned an indictment on July 22, 2009, charging that Harper was "an individual required to register under the Sex Offender Registration and Notification Act, [who had] traveled in interstate and foreign commerce and did knowingly fail to update a registration as required by the . . . Act." After a two-day jury trial, Harper was found guilty and was

subsequently sentenced to 18 months in prison, a term at the low end of the applicable

sentencing range.  He now appeals both his conviction and sentence.

**DISCUSSION**

**Sufficiency of the Evidence**

Title 18 U.S.C. § 2250(a) provides that a sex offender who is required to register

under SORNA and who, having traveled in interstate commerce, "knowingly fails to register

or update a registration" is subject to a fine or imprisonment.  At trial, Harper did not

contest his status as a convicted sex offender or deny that he had traveled in interstate

commerce.  However, at the end of the government's proof, Harper made a motion for

judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the

government had failed to prove that he had *knowingly* failed to register.  The motion was

denied, and the defense rested without presenting evidence. Harper now contends, in

addition to the argument in his Rule 29 motion concerning knowledge, that there was

insufficient proof that he had a duty to register or that he traveled in interstate commerce

after that duty arose.

We review *de novo* the denial of a motion for acquittal, viewing the evidence in "a

light most favorable to the prosecution, giving the prosecution the benefit of all reasonable

inferences from the testimony."  *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir.

2007).  In doing so, we will "reverse a judgment for insufficiency of evidence only if [the]

- 4 -

judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984). The failure to raise an issue in a Rule 29 motion constitutes a waiver, and our review is then "limited to determining whether there was a manifest miscarriage of justice," which exists "only if the record is devoid of evidence pointing to guilt." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (citations and internal quotations omitted).

The record in this case is clearly not devoid of evidence that Harper had a duty to register initially under Minnesota's sex-offender registration statute. In fact, the record establishes that Harper did register in November 1999 and was informed at that time that, pursuant to Minnesota state law, he would be under a duty for a period of 10 years to re-register each time he changed his address. Subsequently, in 2006, Congress enacted SORNA for the purpose of "creat[ing] a national system for the registration of sex offenders." *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010) (citing 42 U.S.C. § 16901). The Act included a delegation by Congress that allowed the Attorney General of the United States to determine retroactivity. *See* 42 U.S.C. § 16913(d). On August 1, 2008, the Attorney General proclaimed the Act retroactive to "all sex offenders including offenders convicted . . . prior to the enactment of [SORNA]." 28 C.F.R. § 72.3. Harper thereby became obligated to update his registration under the federal statute as of that date. Because the 10-year period imposed by state law had not elapsed when Harper was contacted by the Hamilton County Sheriff's Office in June 2009, he was under a duty to comply with SORNA.

Hence, the government proved that Harper, having initially registered in November 1999, was under a duty to update his registration thereafter and that he traveled in interstate commerce while under a duty to update his registration. His arguments to the contrary were and are simply unpersuasive. He claimed, for example, that the Minnesota state judge told him that he would be "done" once he served his 13-month sentence for parole violation. However, that comment apparently referred to the fact that Harper was "done" with post-imprisonment supervsion and would not be subject to parole again, once the new sentence was served. The subject of registration as a sex offender was not mentioned, but that omission and the judge's failure to check a box on the judgment order calling for sex-offender registration were legally irrelevant, given the Minnesota statute's provision that "[i]f a person required to register . . . was not notified by the court of the registration requirement at the time of sentencing or disposition, the assigned corrections agent shall notify the person of the requirements" of the statutory provisions. Minn. Stat. § 243.166, subd. 2. That is, of course, exactly what occurred in Harper's case. As a result, his contention that he was not obligated to register prior to the "notice" that he received from Hamilton County officials is simply not supported by the record. Moreover, his claim that he voluntarily "registered" in Hamilton County after receiving notice is unavailing – he finally updated his registration only as a condition of pre-trial release.

Finally, we note that appellant's reliance on *State v. Williams*, 952 N.E.2d 1108 (Ohio 2011), is misplaced. In *Williams*, the Ohio Supreme Court held that the retroactive application of a 2007 amendment to the state sex-offender classification system violated

the Ohio constitution, but *Williams* clearly did not invalidate the Ohio state registration system as a whole. Moreover, *Williams* is irrelevant in this case, because Harper's duty to register under SORNA was independent of state registration obligations. *See Felts*, 674 F.3d at 603.

**Variance Between Indictment and Evidence at Trial**

On appeal, Harper also contends that the evidence at trial created a fatal variance with the indictment – specifically, that the indictment charged an obligation to register in Ohio, but the evidence proved that he had a duty to register in Minnesota and North Carolina. We would normally review the question of a variance *de novo*, but in this case, the defendant failed to raise the issue in his Rule 29 motion, instead raising it for the first time on appeal. We therefore review it for plain error only, and we find none. *See Price*, 134 F.3d at 350. The indictment charged that he had failed to "update a registration as required by the . . . Act," and that is precisely what the evidence presented by the government established. There was no variance and thus no error in this regard, plain or otherwise.

**Evidentiary Rulings at Trial**

Harper argues, for the first time on appeal, that the district court erred in admitting evidence of "other crimes" under Federal Rule of Evidence 404(b) through testimony by a deputy sheriff from North Carolina that while Harper had resided in North Carolina, and

before moving to Cincinnati, he had been notified that he was required to update his registration but did not comply. Harper objected to this testimony at trial but only on the basis of hearsay. As a result, there was no *Merriweather* hearing under Rule 404(b), *see United States v. Merriweather*, 78 F.3d 1070, 1076-77 (6th Cir. 1996), and we review the district court's decision for plain error, rather than under the usual abuse-of-discretion standard. *See United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010). We find neither. Because Harper's defense was that he had not *knowingly* failed to register under SORNA, evidence that he was repeatedly advised of his obligation under the Act was highly relevant. Moreover, the jury was instructed that it could not convict Harper for failure to register before moving to Ohio and should consider the evidence in question only for the purpose of determining that he acted knowingly in failing to update his registration in Ohio, rather than by accident or mistake. Under these circumstances, there was no error. *See id.* at 525.

Harper did object at trial to the introduction of certified public records as evidence of his 1990 sex-offense conviction in Minnesota, but the documents were relevant to establish the elements of SORNA and were admitted as self-authenticating public records under Federal Rule of Evidence 902. The district court did not commit an abuse of discretion in admitting these documents.

Harper next contends that the district court erred in refusing to admit transcripts from his revocation hearing in the Minnesota state court, purportedly to show that there was no

duty to register ordered at that time and that he was, therefore, not guilty of failing to register in Ohio. However, the motion to admit the transcripts came not in connection with Harper's trial but at his sentencing hearing, purportedly "for purposes of appeal" of the district court's denial of the defendant's earlier Rule 29 motion. The district court declined to permit expansion of the trial record in this irregular manner and denied Harper's motion. In addition, the evidence, if admitted, would have been cumulative, for the reasons set out earlier in this opinion. We find no abuse of discretion in the district court's decision and, therefore, no error.

**Request by Jury**

Nor did the district court err in its response to the jury's request during deliberations for a copy of both the Minnesota statute that Harper noted on his original registration form and the portion of SORNA charged in the indictment. The judge consulted with counsel before declining to provide copies of either statute, indicating that he was satisfied that he had given the jury appropriate instructions on the applicable law and that the requested material might prove confusing. Instead, the district court referred the jury to the relevant portions of the instructions, thereby properly "respon[ding] to the jury's specific concern[s] while prudently refocusing the jury on the instructions and evidence as a whole." *United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007).

**Sentencing**

Harper first claims that his 18-month sentence was procedurally deficient because the district court failed to address his non-frivolous arguments adequately and, based on those arguments, should have granted his request to be sentenced to time served, 91 days. A review of the sentencing hearing indicates, however, that the court did consider, directly or indirectly, each of the three points that the defendant now raises: (1) that he was characterized as "low risk" in a Minnesota risk assessment; (2) that he had not been arrested for any serious misconduct since then; and (3) that he had complied with the sex-offender registration requirement once he was ordered by the district court to do so. But the risk assessment was 10 years old at the time of the sentencing in this case, having been done at the time Harper was released from prison in Minnesota. And, as the district judge noted, because Harper had a continuing duty to update his sex-offender registration each time he changed addresses but had moved in and out of five or six states without complying, he had repeatedly violated the Minnesota statute. It was clear at the sentencing that no matter how many times the registration requirements had been explained to him, Harper remained personally convinced that he had no obligation under the Minnesota state registration law, apparently because no judge had actually ordered him to register until the district court did so as a condition of his pre-trial release. Under all the circumstances that were brought out at the sentencing hearing, the 18-month sentence was procedurally reasonable.

The defendant also claims that the sentence was substantively unreasonable in that it was greater than necessary, given that the underlying sex offense occurred in 1989, some 20 years earlier. However, the offense for which Harper was being sentenced was not the underlying conviction but his failure to comply with SORNA, as charged in the federal indictment. Moreover, the district court carefully went over the factors set out in 18 U.S.C. § 3553(a), addressing the nature, circumstances, and seriousness of Harper's offense, his criminal history, the need for deterrence, and the need to protect the public. We conclude that Harper has failed to overcome the presumption of reasonableness that attaches to a sentence falling within the guidelines, noting once again that his sentence fell at the lowest end of the applicable guideline range. *See United States v. Williams*, 436 F.3d 706 (6th Cir. 2006).

**CONCLUSION**

For the reasons set out above, we AFFIRM the district court's judgment in appeal No. 10-3036. In addition, we DISMISS as moot consolidated appeals No. 11-3532 and No. 11-3741, which challenged the district court's rulings on the defendant's motions for release pending appeal.