**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0683n.06

Case No. 17-5329

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 11, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| RONALD W. PAUL, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GIBBONS, COOK, and THAPAR, Circuit Judges.

COOK, Circuit Judge. Ronald Paul pleaded no contest in Tennessee state court to one count of rape. The judgment that effectuated the plea noted a special condition: "nor shall defendant be required to comply w/ the sexual offender registry." That condition occasions this appeal from Paul's conviction for violating federal sex-offender reporting requirements. Paul maintains that when Tennessee absolved him of his state obligation to register, it also eliminated his corresponding federal registration duty. Agreeing with the district court that the Tennessee judgment did not excuse Paul from complying with federal registration requirements, we AFFIRM.

## I. BACKGROUND

"[T]o allow members of the public to adequately protect themselves and their children," Tennessee requires a "violent sexual offender" like Paul to register with the state promptly after release from custody. Tenn. Code Ann. §§ 40-39-201(b)(2), 40-39-202(30)–(31) (defining a "violent sexual offender" as one convicted of a "violent sexual offense," which includes rape), 40-39-203(a)(1). Tennessee law requires that he thereafter (for life) provide in-person updates both quarterly and within 48 hours of any address change. Tenn. Code Ann. §§ 40-39-203(a)(1), 40-39-204(b)(1), 40-39-207(g)(1)(B).

### A. Paul's Registration History

Following his release from custody, Paul registered as a sex offender at the Jackson County Sheriff's Office, despite the notation on his judgment. The registering officer testified that she not only processed Paul's initial registration but also that she explained Tennessee's registration requirements and gave Paul a copy, which he acknowledged by signing a form. He continued to register a few times each year; eventually, he skipped several quarters and then stopped registering entirely.

All 12 registration forms Paul signed reiterated his Tennessee registration obligations. The final form included specific notice of a duty to register under the federal Sex Offender Registration and Notification Act (SORNA).

Less than a month after Paul last registered, he traveled to the Philippines, and did not return to the United States for over a year. When he returned to Tennessee for a five-week stay, however, Paul failed to report or register a Tennessee address. For that failure, a grand jury indicted him for violating SORNA. A jury later convicted him. Paul appeals, continuing to

argue, as he has throughout this protracted litigation, that he should not have been prosecuted and that dismissal was warranted.[1]

## II. ANALYSIS

"We review de novo a district court's denial of a motion to dismiss an indictment on legal grounds." *United States v. Philp*, 460 F.3d 729, 732 (6th Cir. 2006); *see also United States v. Felts*, 674 F.3d 599, 602 (6th Cir. 2012) (statutory construction and constitutionality issues are reviewed de novo).

### A. Applicable Law and Procedure

SORNA requires sex offenders to inform authorities of where they live, work, and attend school. *See* 34 U.S.C. § 20913(a). The Act "establishes a comprehensive national system for the registration of [sex] offenders." 34 U.S.C. § 20901.

SORNA defines a sex offender as "an individual who was convicted of a sex offense" and subjects such an offender to certain registration requirements. *Id.* § 20911(1). Paul pleaded no contest in Tennessee to one count of rape, qualifying him as a "sex offender" under SORNA and subjecting him to federal registration duties. Among its requirements, SORNA obligates sex offenders to register "in each jurisdiction where the offender resides." *Id.* § 20913(a).

### B. Paul's Violation

The government argues that the following statutory language justifies Paul's conviction: "Whoever . . . is required to register under [SORNA] . . . travels in interstate or foreign commerce . . . and . . . knowingly fails to register or update a registration as required by

---

[1] This case's procedural history includes a mistrial, a jury trial, the denial of multiple motions to dismiss, the grant of multiple motions in limine filed by the government, and an appeal to a different panel of this court resulting in remand to consider intervening Supreme Court precedent.

[SORNA]; shall be fined . . . or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a).

Paul "travel[ed]" internationally to the Philippines and failed to register the Tennessee address where he resided for the five weeks after returning to the United States. The only element Paul can dispute is whether he "knowingly" failed to register that address.

### C. Court Denies Dismissal and Grants Government's Motion in Limine

In practice, sex offenders register according to the requirements of their state of residence; that registration also satisfies SORNA. The wrinkle here is the exemption language in Paul's Tennessee judgment. As Paul sees it, the special Tennessee condition eliminated *all* his registration requirements, prompting him to seek dismissal of this SORNA-based case. The district court denied dismissal, however, concluding that SORNA imposes a distinct federal duty that Paul's Tennessee judgment could not and did not release. The court also granted the government's pretrial motion to withhold from jury consideration the legal issue of whether Paul's Tennessee judgment excused him from SORNA's reporting requirements.

To conclude that SORNA required registration despite Tennessee excusing it,[2] the district court analyzed the language and legislative history of SORNA as well as case law—a task the law assigns to judges, not to jurors. And though Paul wishes to cast this as a violation of his Sixth Amendment rights, he cannot reasonably do so. The judge—as occurs in every trial—gave the jury the law applicable to the case: that SORNA obligated Paul to register as a sex offender. Whether he was guilty beyond a reasonable doubt remained in the jury's hands. *See United*

---

[2] We presume the validity of the exemption in the Tennessee judgment in deciding this appeal.

*States v. Gaudin*, 515 U.S. 506, 513 (1995) ("[T]he judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.").

At trial, Paul conceded that he was "convicted of a qualifying sex offense that requires him to register under [SORNA]" and that the records of his international travel were "true and accurate." In defense, he put before the jury the language from his Tennessee judgment, pressing the jury to find that it showed that he did not *knowingly* violate SORNA. The jury returned a guilty verdict.

### D. Paul's Challenges

Paul advances several theories for why he cannot be convicted under SORNA. He generally targets aspects of SORNA's operation as undercutting Tennessee's state sovereignty. That is, the way Paul assesses it, applying SORNA to him effectively invalidates the exemption Tennessee meant to confer.

He also argues that the federal registration requirement is "tie[d] . . . directly to the state requirement," such that only an individual who is required to register by his state of residence may be prosecuted. In support of that theory, he points to SORNA's requirement that a sex offender register in the "jurisdiction" where he resides as presupposing an existing state obligation. 34 U.S.C. § 20913(a). Paul suggests that three of our cases addressing SORNA convictions of defendants who had also violated state registration requirements confirm his view. *See United States v. Harper*, 502 F. App'x 447 (6th Cir. 2012) (per curiam); *Felts*, 674 F.3d 599 (6th Cir. 2012); *United States v. Trent*, 654 F.3d 574 (6th Cir. 2011).

But Paul fails to appreciate the duality of the sex offender registration systems. Yes, a sex offender's SORNA obligations are coextensive with corresponding state registration requirements. But SORNA imposes duties on *all* sex offenders, irrespective of what they may be

obliged to do under state law. As the government cogently argues, if Congress meant for sex offenders' SORNA requirements to depend on state registration requirements, the Act would specifically say so. Like the government, we read SORNA to bind all individuals "convicted" of sex offenses, not just those with corresponding state obligations. 34 U.S.C. § 20911(1).

We have not interpreted SORNA otherwise. With this legislation, Congress sought to create nationwide uniformity for sex offender registration and resolve inadequacies stemming from the "patchwork of federal and 50 individual state registration systems." *United States v. Kebodeaux*, 133 S. Ct. 2496, 2505 (2013) (quoting *Reynolds v. United States*, 565 U.S. 432, 435 (2012)). The district court correctly denied Paul's motions to dismiss.

### E. Paul's Additional Arguments

*Full Faith and Credit*

Paul also argues that enforcing SORNA against him deprives his Tennessee judgment of the full faith and credit it must be accorded under the Full Faith and Credit Clause of the Constitution. U.S. Const. Art. IV § 1. To prevail, Paul would need to show that the Tennessee judgment validly excused him from *all* registration requirements under both state and federal law. But nothing in the Tennessee judgment addressed Paul's SORNA obligations. The Tennessee court meant to relieve him of "comply[ing] w/ the sexual offender registry," not "any" or "all" registries.

*Vague as Applied*

Paul additionally claims that SORNA is unconstitutionally vague as applied to his situation because it requires him to go to a state office to register for federal purposes when his Tennessee judgment specifically promised that he need not register there. A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of

what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also United States v. Blaszak*, 349 F.3d 881, 888 (6th Cir. 2003). Paul raises no cognizable challenge to the constitutionality of SORNA as applied to him. *See United States v. Lechner*, 806 F.3d 869, 875 (6th Cir. 2015) (explaining that a defendant must show the statute was vague "as applied to his particular case" (quoting *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012))). He highlights only his confusion about his requirements under his Tennessee judgment. That confusion, however, stems from the Tennessee judgment, rather than from SORNA.

Nor can Paul credibly argue that he lacked notice of SORNA's requirements. When he last registered in 2009, the final page of his registration instructions included a section titled: "Notification of Federal Duty to Register as a Sex Offender." This section included the following details of his SORNA requirements:

> Under the Sex Offender Registration and Notification Act, a federal law, persons with sex offense convictions must register as a sex offender and keep their registration current in each jurisdiction (state or territory) in which they reside . . . . [C]onvicted sex offenders are required to notify the jurisdiction where they are required to register not later than three business days (48 hours under Tennessee law) after any change of name, residence, employment, or student status. Failure to comply with these obligations subjects the convicted offender to prosecution for failure to register or update their registration under federal law, 18 U.S.C. § 2250, punishable by up to 10 years imprisonment, which may be independent of any additional state law violations.

On the registration form, Paul marked an "X" next to a line saying he "read and underst[oo]d the requirements" and signed his name. He initialed the bottom of each instruction page. We find that Paul had fair notice of SORNA's registration requirements.

*Tenth Amendment and Commandeering*

Paul alleges that his federal prosecution nullifies Tennessee's police power in violation of the Tenth Amendment. He claims that SORNA deprives Tennessee of the ability to decide who must register in the state and that SORNA violates anti-commandeering principles by requiring Tennessee to register him. *See Printz v. United States*, 521 U.S. 898, 935 (1997).

Neither argument has merit. Again, Tennessee ostensibly relieved Paul of his registration obligations under Tennessee law, nothing more. Paul acknowledges that SORNA is a valid exercise of federal authority under the Spending Clause. *See United States v. Stock*, 685 F.3d 621, 626 (6th Cir. 2012) (citing *South Dakota v. Dole*, 483 U.S. 203, 207–12 (1987)) (finding state action conditioned upon the receipt of federal funds valid); *Felts*, 674 F.3d at 606–08 (same). And Paul misidentifies the relevant actor. SORNA compels action by sex offenders, not states. *Stock*, 685 F.3d at 626. Tennessee could have refused to accept Paul's registration. In that case, Tennessee would have had to forgo some federal funding and Paul would have had an affirmative defense. *See* 18 U.S.C. § 2250(c) (excusing a SORNA violation if "uncontrollable circumstances prevented . . . compl[iance]," the sex offender "did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply," and the sex offender "complied as soon as such circumstances ceased to exist"); *Stock*, 685 F.3d at 626 n.3; *Felts*, 674 F.3d at 607–08. But we are not presented with that scenario here.

## III.  CONCLUSION

For these reasons, we AFFIRM.